The State, ex rel. Ray, v. Klein, Aud.

(No. 4352—Decided June 5, 1950.)

Mr. Robert N. Zanville and Mr. Nathan Greenberg, for relator.

Mr. John J. McCarthy, director of law, for respondent.

Fess, J. This is an action in mandamus, originating in this court, brought by relator as a taxpayer against the city auditor, city manager and members of the council of the city of Toledo and the members of the Lucas county budget commission. (The personnel of the city manager and members of council have changed since the date on which they were made additional parties defendant.)

Relator prays that a writ of mandamus issue to require the respondent auditor "to transfer all funds in his hands and in the bond retirement fund under

ordinance No. 18-46, section 14, paragraph 7, to the trustees of the sinking fund of the city of Toledo for the purpose of carrying out the terms of such ordinance, namely, the retiring of outstanding bonded indebtedness of the city of Toledo, and that the respondent be further ordered and directed to correct and amend the budget information furnished the auditor of Lucas county, Ohio, as aforesaid, and include therein the exact and true amount contained in the bond retirement fund for the purpose of furnishing the county budget commission an accurate statement of the unencumbered balances in the hands of the respondent for the purpose of debt requirements,'' and for all other and proper relief.

Section 14 of ordinance No. 18-46 (the Toledo payroll tax ordinance) allocates the funds collected into seven different categories.

Paragraph 2 provides:

''2. The sum of $1,388,543 per year shall be paid into the Bond Retirement Fund for the purpose of retiring the outstanding indebtedness of the City of Toledo as is required to be retired from the proceeds of taxes raised within the ten-mill constitutional and statutory tax limitations.

''From the aforesaid fund each year the City Auditor shall cause to be placed with the Commissioners of the Sinking Fund an amount necessary to retire such bonds and pay the interest and service charges thereon as they become due.''

Paragraph 7 provides:

''7. The balance of any funds collected under provisions of this ordinance shall be placed in the Bond Retirement Fund of the City of Toledo, for the purpose of retiring outstanding bonded indebtedness.''

The evidence discloses that the figure $1,388,543 in paragraph 2 represented one-fifth of the outstanding

"inside" indebtedness of the city and the provision contemplated the liquidation of the entire amount of the inside indebtedness within the five-year period for which the ordinance was enacted. The requirements of paragraph 2 had been followed, but pending maturities, the accumulated reserve has been invested in short term United States bonds and city of Toledo anticipatory notes. As of April 6, 1949, the surplus account under paragraph 7 in the bond retirement fund amounted to $5,115,594. None of the funds allocated under paragraph 7 to the bond retirement fund during the years 1946-1948 was used to pay principal or interest on the city's outside debt, such indebtedness having been paid by a tax levy on real estate and general personal property duplicate. The major portion of the $5,000,000 was also invested in short term government bonds and Toledo anticipatory notes.

On November 16, 1948, the city council enacted ordinance No. 544-48, directing that the sum of $1,758,-548.85 be transferred from the bond retirement fund to the commissioners of the sinking fund for the purpose of paying the same on the "outside" bonded indebtedness. Subsequent to November 2, 1948, the city tax budget for the year 1948 was amended and it was disclosed to the county budget commission that payroll tax funds were available in the amount necessary to retire the outside debt due and payable in the year 1949.

Since January 1949, the city auditor has transferred from the bond retirement fund to the sinking fund its monthly requirements to meet maturities on the outside debt and, at the time of the hearing on April 19, 1949, had transferred to the trustees of the sinking fund all the money necessary for debt service on all classes of general obligation bonds due and payable up to June 1, 1949.

The record is silent as to the total amount of the unpaid "outside" bonded indebtedness of the city. On May 19, 1950, the parties stipulated that in 1948, prior to the filing of the petition, respondent had sufficient payroll income tax funds to retire the outside bonded indebtedness of the city in 1949, and that prior to the filing of the petition none of the payroll income tax funds were turned over to the sinking fund for the purpose of retiring the outside bonded debt; that beginning in January, 1949, the respondent, for the first time, transferred such funds from the bond investment account to the commissioners of the sinking fund for the purpose of retiring outside debt, but such transfers were only in an amount sufficient to meet 1949 bond maturities; that respondent in 1949 retained all excess payroll income tax funds in the bond retirement fund and made no other investments and transferred no other or additional payroll income tax funds to the sinking fund; and that for the year 1950 respondent also transferred funds to the sinking fund for the retirement of outside debt maturities as the same became due and no real estate tax levy was required or made for such purpose.

Paragraph 7 of section 14 of the ordinance requires the surplus funds collected to be placed in the bond retirement fund "for the purpose of retiring outstanding bonded indebtedness" without distinction between "inside" or "outside" indebtedness. But since paragraph 2 contemplated the liquidation of the entire amount of the "inside" debt within the five-year life of the ordinance, paragraph 7 could apply only to the "outside" debt. (At the time the ordinance was passed, the city had other bonded indebtedness, but it consisted of revenue bonds which were self-liquidating.)

It will be noted that paragraph 2 specifically re-

quires the auditor to place with the commissioners of the sinking fund the amount necessary to pay the principal, interest and service charge upon the "inside" debt as it becomes due. No similar duty is provided in paragraph 7, but it merely provides that the surplus shall be placed in the bond retirement fund for the purpose of retiring bonds. The auditor complied with paragraph 2, but he invested the surplus referred to in paragraph 7 in short-term securities and did not pay any of such funds to the sinking fund until directed to do so by ordinance No. 544-48. As a result, the outside debt maturing in 1946, 1947 and 1948 was paid from real estate and personal property taxes and not from the income tax surplus.

Under Section 4517, General Code, the auditor was authorized but not required to pay over the surplus to the sinking fund. Under Section 4296-1, General Code, and ordinances Nos. 224-36 and 9-43, the transfer of the surplus to the treasury investment account was legitimate and the investment of such funds in short-term securities was proper. The evidence fails to disclose that such funds were required to be used within six months after their investment. For all the record shows, the funds are still available for retirement of bonds.

We, therefore, conclude that, in the absence of a statute or ordinance imposing a mandatory duty upon the city auditor to pay the surplus funds into the sinking fund, the writ should not issue.

The writ should also be denied on another ground. Upon a petition for mandamus, the question presented is whether the relator is entitled to the writ at the time the action is filed, and any action thereafter taken by municipal authorities can not serve to defeat relator's right or affect the jurisdiction of the court to grant the remedy to which the relator was then entitled.

*State, ex rel. Ice & Fuel Co.,* v. *Kreuzweiser, Inspector of Bldgs.,* 120 Ohio St., 352, 166 N. E., 228. However, the court must take into consideration the facts and conditions existing at the time it determines whether to issue a peremptory writ. *State, ex rel. Hawke,* v. *Weygandt, Chief Justice,* 148 Ohio St., 453, 455, 75 N. E. (2d), 691. The "outside" debt maturing in 1946, 1947 and 1948 has been paid from other revenue, and in 1949 and 1950 from income tax surplus. The ordinance expires December 31, 1950, and only such surplus as may accrue from 1950 collections will be available for disposition pursuant to paragraph 7. Whether the auditor should have transferred the surplus in the prior years to the sinking fund for "outside" debt maturities is of no moment now. To issue the writ now would serve no useful purpose and would be in vain. "Nor will mandamus be allowed, unless the act of duty, enforcement of which is sought, is legally possible at the time." 25 Ohio Jurisprudence, 1023, Section 41.

If it affirmatively appears that no wrong can possibly be remedied or right be possibly enforced or promoted, the writ should be refused. *State, ex rel. Apple,* v. *Penze et al., Bd. of Edn.,* 137 Ohio St., 569, 575, 31 N. E. (2d), 841; *State, ex rel. Stoer, v. Raschig, Dir.,* 141 Ohio St., 477, 49 N. E. (2d), 56; *State, ex rel. Rhinehart,* v. *Celebrezze, Dir.,* 147 Ohio St., 24, 67 N. E. (2d), 776.

*Writ denied.*

CONN and CARPENTER, JJ., concur.